Éy the Chancellor i

1. As to the liability of the trustee,-to pay interest for money kept in his hands.
In Haunter's and Herndon's Executors against Spotswood, 1 Wash. 145. Herndon, who was a sheriff, and had received money under the judgment of a County Court, in the case of an attachment, (though that judgment was afterwards reversed in the General Court,) was made to pay interest, because he had not paid it over, and taken security as he had been directed by the County Court, but had kept it.
In the case of Granbury's Executor against The Gransburys, ib. 246. upon the subject of interest, the Court said, that an executor^ account should be closed at the end of each year ; that interest should be allowed upon the different balances, until the whole transaction ended; and, that it was no excuse to say, that there was a risk which the executor was not bound to run, in making the money productive; because, if.that were true, he might apply to a Court of Equity for its direction, as to lending it to individuals, or to the public, which would make him safe-; or he might bring the money iftto Court.
. In the case .of Jones against Williams; 2 Call, 102. the Court said, that the executor should be. allowed interest upon a balance due him, on his administration account ; because it was natural justice, that he who has the use of another man’s money, should pay interest fot it; ‘
. And in the case of Hawkins's Executor against Berkeley's Executors, (MS. June, 1804,) where Hawkins, in bis. life-time, had become the collector-pf Berkeley, the Court said, that Hawkins was in equity chargeable with *417 interest, on all sums by him received and not paid over to Berkeley in a reasonable time, from the time the debtors would have been bound to pay interest, if they had r¿ot been punctual in their payments; and in none of these cases does it appear, that the trustee had made any particular use of the money.
Upon these authorities, then, and that natural justice upon which they are founded, I shall lay down this general rule, that, in all cases whatsoever, a trustee, such as Miller, is liable to pay interest for the trust money in his hands, unless he can shew, that it was necessarily kept in hand for the purposes of the trust; and this he may do upon oath, subject to be controlled by other testimony, and the circumstances of the case.
Miller comes within this general rule ; for, by his own answer, on oath, he has not exempted himself from it s nay, he admits, that he kept but one money chest, and that it is probable, that all the money he received was put together; but avers, that he never was in cash for the estate of the cestui que trust, and refused payment of a just debt: this I believe to be true ; but he has not denied the use of the money on his own account; and, from the circumstances, there can be no doubt of it; for, evidently it was for himself, and not for the creditors of the cestui que trust, that induced him to allow Col. Taylor a discount of ten per cent, for prompt payment; which appears, first, from the trustee’s account, No. 44. and secondly, from the Commissioner’s report; and, at that time, there were funds in his hands ; and that claims to the amount of the money received of Col. Taylor, were not paid in twelve months afterwards. This does not look as if they were pressing upon the funds of the cestui que trust, however they might have been upon the trustee ; for, if the fact was so that the creditors of the cestui que trust were pressing, the money so received would probably have been paid away upon the spot But *418 we ' generally speaking, that men are in the habit of using, all the money they can command ; which may ge some apology for Mr. Miller ,• but, when it does not belong to them, they should pay interest for it.
• Upon this view, of the subject then, Mr. Miller must pay interest; and now the question is, from what time V In the case of Herndon?s Executors, the interest was paid from the date their testator received the money ; because he only had to pay it over, which he did not; and therefore it became a debt due by himself, from the time he received it.
In the case of Granbury, where there were running accounts, as is generally the case where executors or administrators are concerned, interest was allowed upon the balance of each year, from the end thereof, until the Whole transaction ended 5 upon this principle, that an executor or administrator should balance his. account annually : and, in the case of Hawkins, who was only a collector for Berkeley, interest was allowed on all sums which he received, and did not pay over in a reasonable time, from the time the debtors would have been bound to pay interest, if they had not been punctual in. their páyménts but this case, as well as that oí - Herndon?s •:Executors, proves’ only that circumstances must have their influence in each case, notwithstanding -.the case of Granbury, which lays down a very correct general rule7 as to executors and administrators, and which would be applied to the present case, but for this reason, that Mr, ■Miller- was a merchant, and the. moment he received the “money, had 'it; or might have had it, in active use.
: - As it seems to me, such .should be, the rule, for this plain reason, that when a trustee knows he is. to be accountable for interest, in all cases whatsoever, unless he cun'shew, that for the purposes of the, trust he- held the funds, he will either be content topay it, or he will do as the Court said in Granburifs case., apply to the Court for its directions, as how he. shall- dispose of the money, *419 for his own safety, or he will bring it into Court, and apply it as he may be directed. This rule admits of no fraud, upon the one hand, nor imposes any hardship, upon the other ; but if he is not to account for interest, unless he makes a profit, hé has every inducement, so far as his interest can have an influence upon him, to apply the funds to his own purposes, and to prevent a discovery of the profits ; a rule which admits of frauds and impositions : but the rule of a Court of Equity should be so settled as to admit of neither.
This brings me to the second point; as to his right to compensation for his services in performing the trust.
The English books lay it down that, regularly, a trustee is not to have any thing for his own labour and pains, though they admit, that even there, some have thought this a great hardship. It is true, we have adopted the principles of the English law in many respects, so far as they are not incompatible with the principles of our own government, but we have not, by that, adopted indiscriminately all their decisions ; and whatsoever may be my respect for them, as having been delivered by able judges, yet I must do here as they sometimes do there, that is to say, reject those decisions which do not conform to the standard of that justice, which commands us to live honestly, hurt nobody, and render every one his due.
Those who laid down the rule there, that a trustee should not have any thing for his own labour and pains, seem to have done it without regard to that simple principle, but of unerring truth, that the labourer i\ xvorthy of his oxvn hire ; and hence it might well have been thought a hardship, even in that country where so monstrous a rule was suffered to obtain ; it certainly has never taken foothold in our country; but if it has, so far as /can go, I shall blot it out for ever.
In the case of Commissioners acting under the order of the Court, where they have sold and received the *420 ney, a commission has never been refused within my knowledge. In the case of attorneys at law, it is every day’s practice ; and so in the case of executors and administrators. Attend to the language of that Judge, of Whom-1 boast with pride, because he was a native born Virginian, and an ornament to the bench; I mean the late President of the Supreme Court of Appeals, Mr. Pendleton. In the ease of Jones and Williams-, 2 Call, 106. -upon the subject of interest upon a balance due an executor, he said, “ interest is allowed, because it is na- “ tural justice that he who has the use of another’s mo- “ ney, should pay interest for it:” and so I say, in this case, that commissions must be allowed, because it is hut natural justice, that he who has the benefit of another’? services, should pay for them : but Mr. Batts said not; because, said he, the trustee might contract for a compensation; and so might the Commissioners of the Court, or the attorneys at law, but it is never done, upon this universal understanding, that there must be something given, where something is received.
This brings me to the question,- what commission should be allowed ? And I am of opinion, that the same rule which the Court laid down in the case of Granbury, before mentioned, should be laid down in this case,' and that was to allow a commission of five per cent, which should be allowed for risk, trouble, and siich expenses, about the trust, as were incurred within the course of the trustee’s own business ; but, when he is taken-swi of that- course, upon the subject of the trust, he -shoulcl also have such expenses allowed’as are reasonable'.
■ But, admitting this to be the general rule, the counsel contended, that Miller's claim to compensation was not •withinit; because, said the counsel, Miller undertook -the trust gratuitously, but the depositions referred to, do not prove it, and so the general rule applies,
But then, said the counsel, commissions should not be allowed on the widow’s money, But the answer is, that *421 out of the sales of the trust estate, a purchase was to be made for her, in lieu of her dower in the whole estate, and this was surely as much a part of the trustee’s duty as it was to supply Beverley, or to pay any other ereditor. But then it was objected, that Miller should not be allowed commissions upon his store debts ; that is to say, upon money due to himself for goods advanced for the cestui que trust, and this would be true, if Miller was allowed a separate commission for paying away money; but he is not, for his commission is, allowed upon ■ the funds which he had to raise; and whether they are paid to creditors, to the cestui que trust, or retained by himself\ it should not vary his compensation.
Another objection was made, that he had claimed commissions on 90/. paid by Buckner to Taylor, in which Miller had done' nothing more than to sign a lease with the other trustees : this is true; but the answer is, that although the commission of five per cent, upon this particular item, may be more than a reasonable compensation, yet there may have been other transactions, where that commission would not be an equivalent compensation ; and the rule has been fixed upon this principle, that a commission of five per cent, should be allowed upon the -whole transactions taken together.
Another objection was made, that Miller only claimed cpmpensation, although the other trustee had acted in a degree ; but it is admitted, that Miller received and held all the funds, and of course incurred all the risk, trouble and expenses, incident thereto, and must pay all the interest, which places his. claim to the usual commission upon fair ground; subject, however, to the claims of his co-trustees for their services ; but as they have made none, the presumption is, that they have none; and it is very clear that they would not obtain much.
Another objection was made, that the claim by Miller to compensation, is for money held by himself: this is a *422 strange objection, because it is the Very ground of his claim.
And the last objection was, that he claims a commission .upon near 200/. which he received of Col. Taylor, upon a discount of 10 per cent, per ann. There would be great force in the objection, if he was allowed the premium; but the Commissioner has rejected it, and it forces one of Miller’s exceptions, which will receive the attention of the Court in due time. And this brings xné to the third point; as to his right to claim for disbursements which he made without the. consent of his co-trustees while they were alive. ,
The evidence of this fact, is the certificate of one of the trustees, which is excepted to by Miller, and is certainly no evidence, but of that trustee’s own misconduct; for, if he knew that Miller was acting improperly, it was -his duty to have prevented him.
It is true, they were joint trustees, and that the rule of ■law is, that trustees all have an equal power, interest and authority, and cannot act separately, as executors may, but must join, both in conveyances and receipts ; but, I apprehend, that this is as it respects the rights of third persons, and ■ not as it respects the rights of cestui que trust and trustee; for although one trustee is not, in general, liable for the acts of another, yet each is liable,to account.to the cestui que trust, for his own acts; and as ’between them, those acts are binding, and upon that principle the disbursements ought to be allowed in this case, Could it be supposed, that the three trustees, on every occasion, were to be convened to, do every act, however unimportant, for the cestui que trust f Such a doctrine would be unreasonable in the extreme.
: And now as to Miller’s exceptions to this, account: a general rule may suffice for the Commissioner, that in all cases, where, from the nature of the transaction, the trustee might have obtained satisfactory proof, it should *423 now be required of him; but, in all cases, where, from the nature of the case, such proof could not reasonably be expected, as in the case of expenses incurred out of the course of the trustee’s own business, or for spirits at the sales of the estate of cestui que trust, or for the postage of letters, or costs of lawsuits, and the like, they ought to be allowed upon the oath of the trustee.
As to the premium allowed Col. Taylor, it was properly rejected by the Commissioner.
As to the profit made by Miller on some tobacco for which he credited the cestui que trust, it is lost sight of in the advantages which Miller derived from the advancement of goods to the family of Beverley.
The report must be recommitted, to be reformed according to the foregoing principles.